# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE A. JUSINO, | ) | 3:25-CV-1608 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLY WOLF, et al., | ) | |
| *Defendants*. | ) | May 7, 2026 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Jose Jusino, a sentenced inmate[1] at Cheshire Correctional Institution ("Cheshire CI"), filed this civil rights action *pro se* under 42 U.S.C. § 1983 alleging violations of his Eighth, Fourteenth, and First Amendment rights, breach of contract, and seeking both injunctive and monetary relief and damages. Plaintiff names as defendants Connecticut Department of Correction ("DOC") Commissioner Angel Quiros; Regional Chief Operating Officer ("RCOO") Nicole Hernandez; and four DOC employees who work at Cheshire CI: Psychologist Kelly Wolf, Mental Health Social Worker Michelle Binezewski, Health Services Administrative Remedy ("HSAR") Coordinator Debra Cruz, and Supervising Psychologist Michael Moravecek.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] Information on the Department of Correction ("DOC") website shows that Plaintiff is a sentenced inmate housed at the Cheshire Correctional Institution. *See* https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=320660 (last accessed May 7, 2026). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Plaintiff has been incarcerated for almost his entire adult life. Compl., ECF No.1 ¶ 13. He has been classified as an inmate who is housed exclusively in restrictive or segregated housing. *Id.* During his early adulthood, Plaintiff was housed in "oppressive conditions of solitary confinement." *Id.*

Plaintiff has had several mental health evaluations and tests from mental health professionals. *Id.* ¶ 17. Those mental health professionals have concluded that Plaintiff suffers from multiple psychological disorders and conditions and has abnormal brain structure and function that compromise his mental health. *Id.* ¶¶ 14, 17. Plaintiff is more susceptible than the average inmate to repeating maladaptive behaviors, has difficulty learning from his past poor choices, and engages in all or nothing thinking and emotional reasoning. *Id.* ¶ 15. He has been

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

prone to engaging in impulsive, aggressive, and self-harming behavior, including acts of arson in DOC facilities and suicide attempts, and the "murder of [a] cellmate." *Id.* ¶ 16.

Plaintiff's last evaluation and test was a month prior to his transfer to Cheshire C.I. on August 18, 2022; the evaluation gave him a mental health score of three, meaning that he suffers from mild or moderate health disorders that are under good control, and may or may not be on psychotropic medication. *Id.* ¶¶ 18–19. According to the complaint, under DOC Administrative Directive 8.5(7), inmates with a mental health score of three are seen no less than biweekly for individual psychotherapy sessions or weekly for group psychotherapy sessions. *Id.* ¶ 20.

In 2022, Defendant Dr. Kelly Wolf was Plaintiff's primary clinician. *Id.* ¶ 22. Plaintiff alleges that Dr. Wolf exhibited personal animosity against him and was dismissive of his mental health needs. *Id.*

Plaintiff filed legal actions in this District against Dr. Wolf based on her actions toward him, which were assigned to U.S. District Judge Underhill. *See e.g.*, *Jusino v. Reis*, No. 3:23-CV-132 (SRU); *Jusino v. Wolf-Craig*, No. 3:23-CV-1014 (SRU). *Id.* ¶ 22. Plaintiff also requested that Warden Reis and the Deputy Warden contact Dr. Wolf's supervisors, Defendants Supervising Psychologist Dr. Moravecek and RCOO Hernandez, regarding Wolf's behavior (although Hernandez has no authority over mental health clinical decisions). *Id.* ¶¶ 22–23. After Plaintiff met with Dr. Moravecek, Dr. Wolf became attentive to his mental health needs from March to May 2025. *Id.* ¶ 24.

Further, under a settlement agreement reached across his multiple cases before Judge Underhill, Plaintiff was required to be given weekly individual mental health therapy sessions of

no less than thirty minutes to ensure consistent and structured mental health treatment. *Id.* ¶ 26.[3] Following the settlement, Dr. Wolf stated that neither she nor her staff would be able to provide the weekly mental health sessions due to a "lack of staff" and her concern that Plaintiff would sue her again. *Id.* ¶ 27. Thereafter, Drs. Wolf and Moravecek decided to remove Plaintiff from Dr. Wolf's caseload to treatment with a social worker, Michelle Binezewski, despite Dr. Wolf's awareness that Plaintiff had previously criticized Binezewski for being lazy and terminating her sessions early. *Id.*

Binezewski expressed frustration over this transfer, as she was overwhelmed due to "lack of staff," and Dr. Wolf, in comparison, had a caseload of five individuals. *Id.* ¶ 28. Binezewski advised Plaintiff that she would not be able to provide for his mental health needs or expectations and that her job was just to "checkup" on individuals and consider whether Plaintiff's mental health scores should be lowered. *Id.* She also made it clear to Plaintiff that he could not speak to her outside of his sessions, even though he had a job assignment in the Mental Health Unit (which was part of his treatment). *Id.* ¶¶ 25, 28. Binezewski advised him that he must write an inmate request for mental health treatment even in the event of a crisis. *Id.* ¶ 28. She also stated that the time for each session was restricted to no more than twenty minutes. *Id.* When Plaintiff tried to address these issues and concerns with Dr. Wolf, she informed him that he was "no longer her problem," that he must respect her boundaries, and that he should stop approaching her office. *Id.* ¶ 29.

Plaintiff's mental health subsequently deteriorated and he had difficulty performing his job

---

[3] The Court takes judicial notice of the Plaintiff's case dockets before Judge Underhill, which show that the Court closed the following cases after the parties reached a global settlement agreement: No. 3:18-CV-02004 (SRU), 3:21-CV-00620 (SRU), 3:21-CV-00878 (SRU), 3:22-CV-00490 (SRU), 3:23-CV-00132 (SRU), and 3:23-CV-01014 (SRU). Plaintiff's complaint alleges that the settlement agreement was intended to assure Plaintiff that he would have "consistent/structured . . . mental health care/service treatment," but he claims it was "never recommended/consulted/ review/agree/approved, etc." ECF No. 1 ¶ 26. The foregoing dockets reflect, however, that Plaintiff entered into a binding settlement agreement. *See*, *e.g.*, No. 3:21-CV-00620 (SRU), ECF Nos. 85–86.

assignments. *Id.* ¶¶ 30–31. He would walk out of work nearly every day, failed to take out the trash, and did not paint Binezewski's office. *Id.* Plaintiff complained to Warden Reiss, Dr. Wolf, and RCOO Hernandez that Binezewski did not offer him the required therapy sessions in retaliation for his failures in performing his job assignments, to no avail. *Id.* ¶ 31.

Dr. Wolf, Dr. Moravecek, and RCOO Hernandez are aware that Plaintiff has not been receiving treatment in accordance with the DOC administrative directives or the terms of his settlement agreement. *Id.* ¶ 32. Binezewski has also falsely noted in Plaintiff's medical record that he refuses treatment. *Id.*

Dr. Wolf, Dr. Moravecek, and RCOO Hernandez failed to ensure Plaintiff receives his necessary mental health treatment despite their knowledge that he is prone to develop negative obsessive thoughts and has difficulty controlling his anger. *Id.* ¶ 33. This, in turn, has led to Plaintiff developing negative obsessive thoughts and hatred towards Binezewski, who now does not provide Plaintiff with his settlement-required sessions out of fear. *Id.* ¶ 33.

Plaintiff alleges that RCOO Hernandez, Dr. Wolf, Moravecek and Binezewski conspired to limit his mental health sessions to thirty minutes and to deny his request to change clinicians. *Id.* ¶ 35. In response to Plaintiff's inmate request form complaining that Dr. Wolf and Binezewski ignored his mental health needs, Hernandez advised him to follow his HSAR procedure if he continued to feel dissatisfied with his mental health treatment. *Id.* ¶ 36.

Plaintiff alleges that Commissioner Quiros created a policy—DOC Directive 8.9—for the HSAR Coordinator to resolve a Level 1 HSAR by consulting with the provider who made the health care decision, which allows for bias from the provider in resolving the HSAR. *Id.* ¶ 39. Further, Plaintiff claims that this requirement contradicts Directive 8.9's provision that an

5

employee who is the subject of an investigation cannot participate in the resolution of an HSAR. *Id.*

HSAR Coordinator Cruz forwarded Plaintiff's Level 1 HSAR to Hernandez, although Cruz was aware that Hernandez only provides Level 2 HSAR review and has no authority to render mental health clinical decisions. *Id.* ¶¶ 37–38. Hernandez rejected Plaintiff's administrative remedy with no opportunity for him to appeal it. *Id.* ¶ 36.

In early 2025, Hernandez put Plaintiff on a grievance restriction for one year but permitted him to submit HSARs despite the restriction. *Id.* ¶ 40. After Plaintiff filed an HSAR against both her and Cruz, Hernandez notified Plaintiff verbally that he would also be on an HSAR restriction going forward. *Id.* She advised him that he would receive a disciplinary report if he continued to file HSARs and that his pending HSARs would not be processed. *Id.*

At present, Plaintiff's only "avenues" for treatment are through scheduling sessions with Warden Reis and through "support/crisis intervention" from Warden Reis and other non-mental health professionals. *Id.* ¶ 41.

## II.    DISCUSSION

Plaintiff asserts claims arising under 42 U.S.C. § 1983 for Eighth Amendment deliberate indifference to his mental health treatment needs, First Amendment retaliation, and the Fourteenth Amendment's Due Process Clause, as well as a state law claim for breach of contract. The Court first considers whether Plaintiff has alleged any plausible section 1983 claims for damages against Defendants in their individual capacities.

### A.    Eighth Amendment Violation

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual

punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical or mental health needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

To state a claim for deliberate indifference to serious medical needs, Plaintiff must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

The first element is objective and requires the court to make two separate inquiries. First, the court must determine whether the inmate "was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023). Under this standard, medical providers are only required to have "act[ed] reasonably." *Id.* at 279–80 (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)). The second inquiry requires the court to determine "whether the inadequacy in medical care is sufficiently serious," which "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)).

A "sufficiently serious" deprivation exists if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Sufficiently serious deprivations also include denial of adequate "mental health care." *Spavone*, 719 F.3d at 138. Additionally, a medical condition may not initially be serious, but may become

serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702–03 (internal quotation marks and citation omitted).

Where "a prisoner receives some care, but allegedly inadequate care," the court's consideration of the seriousness of the plaintiff's condition must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) (internal quotation marks omitted; citing *Salahuddin*, 467 F.3d at 279).

The second element is subjective. The plaintiff must show "that the official acted with a culpable state of mind of 'subjective recklessness,' such that the official knew of and consciously disregarded 'an excessive risk to inmate health or safety.'" *Thomas v. Wolf*, 832 F. App'x 90, 92 (2d Cir. 2020) (summary order) (citations omitted). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted). Nor does a plaintiff's disagreement over the medical treatment provided constitute deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (summary order) (citations

omitted).

### 1. *Objective Element*

Plaintiff's complaint has sufficiently alleged facts to satisfy the objective element of an Eighth Amendment claim. His allegations indicate that he received *some* mental health treatment but that such treatment was inadequate and violated the terms of his settlement agreement, resulting in his mental health deteriorating to the point that he poses a risk of harm to himself and others. ECF No. 1 ¶¶ 14–17, 30, 33; *see also Sanders*, 2019 WL 5538118, at *3. Further, the harm that Plaintiff has alleged, both in terms of his mental deterioration and suicidal ideation, is sufficiently serious under Second Circuit precedent, and the deprivation of mental health treatment has only compounded the severity of such harm. *See Spavone*, 719 F.3d at 138. Thus, the Court considers whether Plaintiff's allegations are sufficient to satisfy the subjective element of the Eighth Amendment analysis.

### 2. *Subjective Element*

#### a. Conspiracy

First, Plaintiff alleges that Defendants Hernandez, Wolf, Moravecek and Binezewski conspired to deprive him of adequate mental health treatment. ECF No. 1 ¶¶ 35, 43. But Plaintiff has not alleged facts to support a plausible claim that these Defendants conspired to deprive him of adequate medical care.

For a claim of conspiracy to violate a plaintiff's civil rights under section 1983, a plaintiff must show: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.

9

1999).  A plaintiff must allege facts showing "that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003).  Thus, the complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, Nos. 23-1339, 23-7446, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (summary order), *cert. denied*, 145 S. Ct. 2705 (U.S. May 19, 2025) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *see also Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (plaintiff must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy").

Here, Plaintiff alleges his conspiracy claim in wholly conclusory terms.  ECF No. 1 at 17. While Plaintiff's complaint describes how Dr. Wolf and Dr. Moravecek transferred his treatment to Defendant Binezewski, it does not allege any agreement to transfer his treatment with the goal of depriving him of adequate medical care.  *Id.* ¶¶ 27–28.  Accordingly, Plaintiff has not alleged facts that show any Defendants "entered into an agreement, express or tacit," to violate his civil rights.  *See Webb*, 340 F.3d at 110.  Because the Court cannot "speculate about unpleaded facts that might be favorable" to Plaintiff, it dismisses his conspiracy claims under 28 U.S.C. § 1915A. *See Darby*, 14 F.4th at 130 n.6.

And even if Plaintiff's conspiracy claims were sufficiently alleged, they would nevertheless be barred by the intracorporate conspiracy doctrine, as Defendants are all members of the same organization.  *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018)

10

(noting that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators."); *Burrell v. Quiros*, No. 3:21-CV-393 (KAD), 2021 WL 1239916, at *6 n.3 (D. Conn. Apr. 2, 2021) ("Although the Second Circuit has not yet considered whether the intracorporate conspiracy doctrine applies to section 1983 cases, district courts within the Second Circuit have applied the doctrine in section 1983 cases and, in particular, to section 1983 cases filed by prisoners").

While an exception to the intercorporate conspiracy doctrine applies where Defendants are "pursuing personal interests wholly separate and apart from the entity," this exception does not apply here. *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (citation and internal quotation marks omitted). To meet the exception, a plaintiff must do more than simply allege that the defendants were motivated by personal bias against him. *See Vega v. Artus*, 610 F. Supp. 2d 185, 205 (N.D.N.Y. 2009) (holding that "in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against plaintiff"). Plaintiff's complaint raises no inference that Defendants are individuals who conspired for their own interests that were "wholly separate and apart" from the DOC. Accordingly, Plaintiff's Eighth Amendment conspiracy claim must be dismissed.

### b. Drs. Wolf and Moravecek

The Court next considers whether Plaintiff has alleged facts to support a plausible claim that any Defendant acted with deliberate indifference to his serious mental health needs.

11

Plaintiff alleges that Dr. Wolf provided responsive mental health treatment from March through May 2025, but then Drs. Wolf and Moravecek transferred his mental health treatment to a mental health social worker, Binezewski, due to Dr. Wolf's concerns about inadequate staffing and fear that Plaintiff would file a lawsuit against her again.  ECF No. 1 ¶¶ 22, 24, 25, 27.  He maintains that Defendants were aware that this transfer would adversely affect his mental health.  *Id.*

In most instances, an inmate's challenge to a provider's medical judgment will raise an issue of negligence or medical malpractice that is insufficient to amount to a constitutional claim.  *See Chance*, 143 F.3d at 703; *see also Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at *18 (S.D.N.Y. Oct. 24, 2011) (noting "disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under [section] 1983") (cleaned up).  Nevertheless, "a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan" where treatment decisions or recommendations are not derived from "sound medical judgment," but rather from "ulterior motive."  *Chance*, 143 F.3d at 703–04 (holding that plaintiff stated a claim of deliberate indifference by alleging that defendants recommended extracting his teeth because of monetary incentives).

Credited as true, Plaintiff's allegation that Dr. Wolf transferred his care to Defendant Binezewkski, despite being aware of its insufficiency, out of "concern that Plaintiff would sue her again," is not a decision about care that is derived from sound medical judgment about Plaintiff's mental health needs.  ECF No. 1 ¶ 27.  Further, Plaintiff alleges facts reflecting that he suffered

from the inadequate mental health treatment under Binezewski's care, *id.* ¶¶ 28-32, and that Dr. Wolf ignored his complaints about his need for more responsive mental health treatment, *id.* ¶ 29.

But as to Defendant Moravecek, Plaintiff does not allege that Moravecek was aware of Defendant Binezewkski's inadequacies, as he has alleged Dr. Wolf was. *Id.* ¶ 27. While perhaps Defendant Moravecek should have taken further steps to secure Plaintiff a healthcare provider who could provide him with requisite treatment, this would amount to mere negligence, not reckless indifference as required under the Eighth Amendment.

Accordingly, the Court will permit Plaintiff to proceed on an Eighth Amendment claim of deliberate indifference to his mental health needs against Dr. Wolf in her individual capacity, but dismisses Plaintiff's Eighth Amendment deliberate indifference claim as to Defendant Moravecek.

### c. Binezewski

Plaintiff also alleges that Defendant Binezewski failed to provide sufficient mental health care. Specifically, he alleges that Binezewski advised that she "wouldn't be able to provide [him] with his needs/expectations" and that her "job [was] to 'check up' on individuals to make sure they are doing ok" and consider lowering Plaintiff's mental health score. ECF No. 1 ¶ 28. While these allegations indicate that Binezewski may have lacked the professional capacity to provide Plaintiff with a responsive level of mental health treatment—s*ee Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (explaining that, absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted only to negligence, not deliberate indifference)—Plaintiff also alleges that Binezewski falsely noted in his medical record that he refused treatment and that Binezewski failed to provide him with mental health treatment due to poor job performance. *See*

13

ECF No. 1 at ¶¶ 31–32.  Construed in a light most favorable to Plaintiff, his allegations suggest that Binezewski's decisions regarding his mental health treatment needs did not derive from sound medical judgment.

For purposes of initial review, the Court permits Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Binezewski in her individual capacity.

### d.  RCOO Hernandez

Plaintiff alleges that RCOO Hernandez limited his mental health sessions to thirty minutes, denied his request to change clinicians, advised him to follow his HSAR procedure if he was not satisfied with his mental health treatment, and later placed him on a grievance restriction that prohibited him from filing HSARs.  ECF No. 1 ¶¶ 35–36, 40.  Plaintiff further alleges that he complained to RCOO Hernandez about his inadequate mental health treatment from Binezewski. *Id.* ¶ 31.

But Plaintiff's complaint also states that Defendant Hernandez has "no mental health profession or mental health clinical authority[,] only to enforce health service procedures/policies." *Id.* ¶ 34.  Accordingly, because Defendant Hernandez's authority does not extend to the ability to make medical decisions, the Court must look to whether Defendant Hernandez violated Plaintiff's Eighth Amendment rights in any other manner, including by exhibiting deliberate indifference through enforcement of any administrative procedures.  Construed most broadly, Plaintiff's complaint suggests that RCOO Hernandez may have acted with deliberate indifference to his mental health needs when she barred his filing of HSARs to obtain mental health treatment.

Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment claim against Hernandez in her individual capacity for further development of the record.

14

e.   Angel Quiros

Finally, Plaintiff's allegations do not raise a plausible Eighth Amendment claim against Commissioner Quiros.  A plaintiff may be able to establish an Eighth Amendment claim where a prison official allegedly "promulgated an unconstitutional policy with a culpable mental state—in this case, deliberate indifference." *Brunache v. Annucci*, No. 22-CV-196 (JLS), 2023 WL 146850, at *12 (W.D.N.Y. Jan. 9, 2023) (quoting *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL 4463033, at *8–9 (S.D.N.Y. Sept. 28, 2021)).  But Plaintiff's conclusory allegations that Quiros created a policy or custom under which unconstitutional practices occurred are insufficient to state an Eighth Amendment claim.  *See Jusino v. Quiros*, No. 3:21-CV-620 (SRU), 2021 WL 5111908, at *8 (D. Conn. Nov. 3, 2021).  And no allegations suggest that Quiros was aware that the HSAR process deprived inmates of their Eighth Amendment right to adequate mental health treatment.  Accordingly, Plaintiff's Eighth Amendment claim is dismissed as against Defendant Quiros.

B.   Fourteenth Amendment Due Process Clause Violation

Plaintiff also brings a Fourteenth Amendment due process clause claim against Defendants Commissioner Quiros, RCOO Hernandez, HSAR Coordinator Cruz, Dr. Wolf, Dr, Moravecek, and Binezewski.  ECF No. 1 ¶ 44.

The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  The Due Process Clause of the Fourteenth Amendment "has been interpreted as a 'protection of the individual against arbitrary action of government.'" *Lombardi v. Whitman*, 485 F.3d 73, 78–79 (2d Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)).  The Due Process Clause has two components:  procedural and substantive.  *Id.* at 79.  While procedural due process prohibits

deprivations of life, liberty, or property without constitutionally adequate procedures, substantive due process protects certain rights "no matter the process employed by the State." *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017) (citing *Madden v. City of Meriden*, 602 F. Supp. 1160, 1166 (D. Conn. 1985)). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement, a plaintiff cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

### 1. *Grievance Procedure*

Plaintiff complains that Quiros violated his right to procedural due process by creating and allowing a policy that deprived him of the ability to obtain a non-biased review of his diagnosis and treatment. ECF No. 1 ¶ 44(A). Plaintiff further maintains that Hernandez violated his due process rights by interfering with his HSAR process and that both Hernandez and Cruz deprived him of his right to the HSAR process to obtain mental health treatment. *Id.* ¶ 44(B–C).

The Court analyzes Plaintiff's procedural due process claim in two steps: first the Court asks whether Plaintiff has been deprived of a liberty or property interest, and if so, the Court considers "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). Accordingly, the Court first considers whether Plaintiff "had a constitutionally-recognized liberty interest in making use of . . . [the] administrative grievance system." *Rogers v. Long*, No. 3:21-CV-1720 (OAW), 2022 WL 11727852, at *2 (D. Conn. Oct. 20, 2022).

It is well established that inmates have no constitutional entitlement to grievance

16

procedures, to receive a response to a grievance, or to have a grievance processed properly.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (summary order) (claim relating to grievance procedures "confuse[d] a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes . . .create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) (summary order) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.") (citing *Holcomb*, 337 F.3d at 224); *Kalican v. Dzurenda*, No. 3:12-CV-1009 (SRU), 2015 WL 1806561, at *6 (D. Conn. Apr. 21, 2015) (no constitutional right to receive response to grievance).

Absent facts to support a cognizable liberty interest, Plaintiff cannot proceed on his claim that Commissioner Quiros violated his due process rights by allowing for an ineffective grievance procedure.    Moreover, Plaintiff must either establish that Quiros violated the Fourteenth Amendment by his own conduct or that he created, adopted, perpetuated, or enforced an unconstitutional policy.  *See Wright v. Cook*, No. 3:21-CV-01732 (SRU), 2025 WL 2968031, at *7 (D. Conn. Oct. 21, 2025).  Plaintiff's complaint fails to do so, as it alleges that the bias of Quiros' subordinates who were reviewing the HSARs is what renders the process ineffective—but a supervisor is not liable under 42 U.S.C. § 1983 for conduct by his subordinates without personal involvement in the constitutional violation.  *See Tangreti v. Bachman,* 983 F.3d 609, 619 (2d Cir. 2020).

In addition, Plaintiff's allegations that Hernandez and/or Cruz interfered with or deprived him of proper review under the HSAR process fail to state plausible claims of a Fourteenth

17

Amendment procedural due process violation. *See Garcia v. Semple,* No. 3:18-CV-1226 (SRU), 2019 WL 5597771, at *15 (D. Conn. Oct. 30, 2019) ("allegations that a prison official violated the procedures set forth in a state's administrative remedy program that is applicable to prisoner grievances do not state a claim of a violation of an inmate's constitutional rights") (collecting cases); *Sandin,* 515 U.S. at 481–82 (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates); *Fernandez v. Armstrong*, No. 3:02-CV-2252 (CFD), 2005 WL 733664, at *10 (D. Conn. Mar. 30, 2005) (explaining "mandatory language in a prison directive or regulation does not in and of itself create a liberty interest")

Nor do Plaintiff's allegations suggest that he was deprived of his constitutional right of access to the courts, which "is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983). The "denial of access to the grievance process or violation of grievance procedures does not by itself give rise to a constitutional violation." *Lopez v. McGill*, No. 3:08-CV-1931 (CSH), 2009 WL 179787, at *6 (D. Conn. Jan. 21, 2009); *see also Harris v. Westchester Cnty. Dep't of Corr.*, No. 3:06-CV-2011 (RJS), 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008). Grievance restrictions do not violate a prisoner's right to petition the government because the restriction does not prohibit the inmate's "right to file civil actions and the Prison Litigation Reform Act's ('PLRA') exhaustion requirement would not preclude him from asserting § 1983 claims in federal court that were barred by grievance restrictions." *Riddick*, 731 F. App'x at 13; *see, e.g.*, *Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2019 WL 3944435, at *12 (D. Conn. Aug. 21, 2019) ("If prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to

proceed to federal court.") (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)).

Thus, Plaintiff's allegations concerning his inability to access his administrative remedies due to Hernandez's enforcement of a grievance restriction fail to support any claims that he was deprived of his right to petition the government for redress of grievances or his right of access to the courts under the First Amendment.

In sum, the Court dismisses Plaintiff's claims of First and Fourteenth Amendment violations arising from the alleged restrictions on Plaintiff's abilities to utilize proper administrative remedy procedures or improper processing of his HSAR. *See* 28 U.S.C. § 1915A(b)(1).

### 2. *Binezewski, Wolf, Hernandez and Moravecek*

Plaintiff also alleges that Binezewski, Wolf, Hernandez and Moravecek violated his Fourteenth Amendment right to due process by failing to provide him with mental health treatment in compliance with the settlement agreement. ECF No. 1 ¶ 44(E). But Plaintiff's claim to enforce the settlement agreement is a state law breach of contract claim, not a constitutional one. Thus, the Court discerns no allegations in Plaintiff's complaint suggesting Defendants violated a cognizable liberty or property interest under the settlement agreement. The Court analyzes Plaintiff's breach of contract claim below.

To the extent Plaintiff attempts to assert a Fourteenth Amendment substantive due process claims arising from lack of mental health treatment against these Defendants, that claim is also dismissed. The Supreme Court has instructed that, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide

19

for analyzing [the] claims." *Cnty. of Sacramento*, 523 U.S. at 842 (cleaned up); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (explaining that, "if a constitutional claim is covered by a specific constitutional provision, such as the ... Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process").

Plaintiff's denial of adequate medical care claims, as analyzed above, are cognizable under the Eighth, not the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding deliberate indifference claims of sentenced inmates are cognizable under the Eighth Amendment, while deliberate indifference claims of unsentenced inmates are cognizable under the Fourteenth Amendment). As the Eighth Amendment provides an explicit textual source of constitutional protection for Plaintiff's complaints about his mental health treatment arising during his confinement as a sentenced inmate, the Court declines to consider his claims under the substantive component of the Fourteenth Amendment's due process provision. *Santana v. Quiros*, No. 3:21-CV-376 (SVN), 2022 WL 16706959, at *10 (D. Conn. Nov. 4, 2022) (collecting cases); *Kaminski v. Oniyuke*, No. 3:19-CV-58 (SRU), 2019 WL 1877075, at *4 (D. Conn. Apr. 26, 2019) (holding that, on initial screening of the complaint, "if [the plaintiff's] substantive due process

20

claim is based on the same action(s) that gave rise to his Eighth Amendment claim for deliberate indifference to medical needs, then his due process claim will be dismissed").

Accordingly, any claims under the Fourteenth Amendment Due Process Clause against Binezewski, Wolf, Hernadez, and Moravecek are not plausible and are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

C.  First Amendment Retaliation

Next, Plaintiff asserts two claims of First Amendment retaliation:  (1) Binezewski denied him mental health treatment to retaliate against him for making a complaint to her supervisors; and (2) Hernandez threatened to issue him a disciplinary report to retaliate against him for submitting an HSAR against her.  ECF No. 1 ¶ 45.

To plead a First Amendment retaliation claim, an inmate must plausibly allege:  "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted).  The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (cleaned up).  Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms."  *Id.*

"Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance."  *Baltas v. Maiga*, No. 3:20-CV-1177 (MPS), 2020 WL 6275224, at *8 (D. Conn.

21

Oct. 26, 2020). "Although some district courts have found that verbal complaints may be protected for the purposes of a First Amendment retaliation claim, the Second Circuit has yet to articulate a bright line rule regarding constitutionally protected oral speech by an inmate." *Cosby v. McDonald*, No. 3:20-CV-432 (MPS), 2020 WL 5026550, at \*6 (D. Conn. Aug. 25, 2020) (internal quotation omitted). Courts allowing a retaliation claim based on oral inmate speech "distinguish between verbal grievances, which are considered protected speech, and verbal confrontations or arguments, which are not." *Milner v. Lamont*, No. 3:20-CV-1245 (JAM), 2022 WL 2110971, at \*8 (D. Conn. June 9, 2022).

In this District, courts have considered an inmate's request for medical attention to fall within the First Amendment's protection. *See Dunbar v. Dep't of Corr.*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at \*8 (D. Conn. Jan. 10, 2023) (noting district court disagreement but finding request for medical attention to be protected). Accordingly, for purposes of initial review, the Court concludes Plaintiff has sufficiently alleged the first element for his First Amendment retaliation claims against both Binezewski and Hernandez.

An adverse action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Benway v. Aldi*, No. 3:19-CV-208 (VAB), 2020 WL 4433561, at \*4 (D. Conn. July 31, 2020) (quoting *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012)). To satisfy the causation element, a plaintiff must allege but-for causation. *Crenshaw v. Ross*, No. 25-CV-479 (SFR), 2025 WL 3514682, at \*5 (D. Conn. Dec. 8, 2025) (citing *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (finding that causation in a First Amendment retaliation claim "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive")). In assessing whether but-

22

for causation has been plausibly alleged, the Court looks to "'particularized evidence' that suggests a retaliatory motive, such as 'expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken.'" *Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order) (quoting *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995)).   The Court may also consider temporal proximity between the protected activity and the alleged retaliation. *See A.S. v. City Sch. Dist. of Albany,* 585 F. Supp. 3d 246, 269–70 (N.D.N.Y. 2022).

### 1.   *Binezewski*

Even assuming the alleged deprivation of mental health treatment constitutes an adverse action, Plaintiff fails to allege specific facts to support an inference that Binezewski failed to provide him mental health treatment because he complained to her supervisors.

In the body of his complaint, Plaintiff alleges that he met with Dr. Wolf and Binezewski to discuss Binezewski's failure to provide him with the required mental health sessions "in retaliation" for his "difficulty performing his job assignments" including painting her office and collecting the trash.  ECF No. 1 ¶ 31.  But Plaintiff's complaint does not explain how Binezewski deprived him of mental health treatment because she learned that he had complained about her. Quite the opposite, his complaint suggests that Binezewski advised him that she did not have the authority to provide him with the required mental health treatment after she reviewed his file *prior* to his complaints to Dr. Wolf.  *See id.* ¶¶ 28–29.  Accordingly, the Court dismisses Plaintiff's First Amendment retaliation claim against Binezewski as not plausible.  *See* 28 U.S.C. § 1915A(b)(1).

### 2.   *Hernandez*

23

Plaintiff alleges that Hernandez retaliated against him by threatening to issue him a disciplinary report. Generally, threats by correctional officials that are not carried out have been held insufficient to constitute adverse action. *See Crispin v. Sussel*, No. 3:21-CV-885 (KAD), 2023 WL 22421, at *3 (D. Conn. Jan. 3, 2023) (threat of civil commitment proceedings without being carried out by correctional officials did not constitute adverse action for First Amendment retaliation claim) (citing cases including *Torres v. Wright*, No. 3:17-CV-01919 (JAM), 2018 WL 1175408, at *5 (D. Conn. Mar. 6, 2018) (threatening to place plaintiff in punitive segregation if he did not stop complaining was insufficient to constitute adverse action); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 432–34, (S.D.N.Y. 2010) (no adverse action where correctional officer twice threatened inmate-plaintiff with physical violence for writing grievances, including one incident where officer entered plaintiff's cell, "held his right gloved fist [to plaintiff's] face, [and] threatened [him] by saying that one day he and [plaintiff] will party")).

Further, even if Hernandez's threat may be considered adverse action, Plaintiff has not sufficiently alleged facts to suggest she acted with a but-for retaliatory animus for Plaintiff having filed an HSAR when she advised him what the consequences of filing an HSAR while on a grievance restriction would be. Hernandez's actions could be read to be motivated by enacting discipline in accordance with prior-stated consequences for violating Plaintiff's grievance restriction. Accordingly, in accordance with the Second Circuit's directive to view prisoner retaliation claims skeptically, Plaintiff's allegations do not support a claim of First Amendment retaliation against Hernandez, and such claim is also dismissed as not plausible. *See* 28 U.S.C. § 1915A(b)(1).

24

D. Official Capacity Claims

To the extent Plaintiff asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In addition to his individual capacity claims for monetary relief, Plaintiff has also alleged claims for injunctive relief against Defendants in their official capacities. Specifically, he seeks injunctive orders to provide him with treatment for his mental health disorders, to assign him to a new clinician, and to revise Administrative Directive 8.9 to ensure fair diagnosis and treatment review. ECF No. 1 at 21.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent the plaintiff alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758, 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer*, 511 U.S. at 846–47).

Plaintiff's complaint suggests that he is still subject to continuing indifference to his serious mental health needs. ECF No. 1 ¶ 41. Thus, the Court will permit him to proceed on his official capacity claims for injunctive relief against Dr. Wolf and RCOO Hernandez, who could plausibly afford him the requested relief to provide adequate mental health treatment and to assign him to a

new clinician. *Id.* at 21.  Because the Court dismissed Plaintiff's Eighth Amendment claim against Dr. Moravecek, his request for injunctive relief against Dr. Moravecek is also dismissed.

Plaintiff's request for an order to revise Administrative Directive 8.9, however, goes beyond the scope of what is necessary to remedy any alleged ongoing Eighth Amendment deliberate indifference.    Accordingly, Plaintiff's request for injunctive relief to revise Administrative Directive 8.9 , brought against Defendant Quiros in his official capacity, must be dismissed.

E.  State Law Breach of Contract Claim

Finally, Plaintiff asserts a state law breach of contract claim for violation of the terms of his global settlement agreement.

A settlement agreement requires its own basis for a federal court to have jurisdiction over the enforcement of its terms. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 378–81 (1994). Without such basis, a federal court will only retain jurisdiction to enforce a settlement agreement if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement. *Id.*; *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) ("[A] district court does not automatically retain jurisdiction to hear a motion to enforce a settlement agreement simply by virtue of having disposed of the original case.  Instead, a motion to enforce a settlement agreement is fundamentally a claim of breach of a contract, part of the consideration of which was dismissal of an earlier federal suit and therefore requires its own basis for jurisdiction.") (internal quotation marks and citations omitted).

The Court takes judicial notice of the Court dockets in 3:18-CV-02004-SRU, 3:21-CV-00620 (SRU), 3:21-CV-00878 (SRU), 3:22-CV-00490 (SRU), 3:23-CV-00132 (SRU), and 3:23-

26

CV-01014 (SRU).  A stipulation of dismissal for dismissal with prejudice was filed in 3:18-CV-02004 (SRU), 3:21-CV-00878 (SRU), 3:22-CV-00490 (SRU), 3:23-CV-00132 (SRU).  In none of these cases did the Court enter an order that included language retaining jurisdiction over any issues regarding the enforcement of the settlement agreement.  Nor is there any other suggestion on the case dockets themselves that the Court would retain jurisdiction over enforcement of the settlement agreement's terms.

Absent an independent, jurisdictional basis for this Court to enforce the settlement, the Court considers whether to exercise supplemental jurisdiction over Plaintiff's state law contract claim.  A federal court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Supplemental jurisdiction can only exist where the state and federal claims share a "common nucleus of operative fact" such that the plaintiff "would ordinarily be expected to try them in one judicial proceeding." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).  "[A] sufficient relationship will be found if the facts pertinent to the federal and state claims substantially overlap or if 'presentation of the federal claim necessarily [would bring] the facts underlying the state claim before the court.'"  *BLT Restaurant Group LLC v. Tourondel*, 855 F. Supp. 2d 4, 10 (S.D.N.Y. 2012) (quoting *Lyndonville Sav. Bank*, 211 F.3d at 704).

Under § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the

claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Additionally, a district court should not decline to exercise supplemental jurisdiction under section 1367(c) unless it also determines that to exercise such jurisdiction would not promote economy, convenience, fairness, and comity. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 214 (2d Cir. 2004)).

Here, the Court finds that exercising supplemental jurisdiction over Plaintiff's state law breach of contract claim is appropriate. First, it is clear that Plaintiff's breach of contract claim arises out of the same common nucleus of facts as his remaining Eighth Amendment deliberate indifference claim. Further, Plaintiff's breach of contract claim, on the face of his complaint, does not raise any particularly novel or complex questions of state law.

Nor does the breach of contract claim predominate over Plaintiff's remaining Eighth Amendment claim. To be sure, there are substantial overlapping questions between the two claims, but the Court cannot say at this stage of the pleadings that Plaintiff's breach of contract claim eclipses the Eighth Amendment claim it has original jurisdiction to adjudicate. This is especially true because the Court does not have the benefit of having the settlement agreement in the record. Given this, the Court finds that the exercise of supplemental jurisdiction over Plaintiff's state law claim is appropriate here.

Turning to the merits of Plaintiff's claim, the Court finds that Plaintiff has sufficiently alleged breach of the settlement agreement. The elements of a breach of contract claim under Connecticut law are: the formation of an agreement; performance by one party; breach of the

28

agreement by the other party; and damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). When the language of a contract is "clear and unambiguous," the contract must be "given effect according to its terms, and the determination of the parties' intent is a question of law." *Nation-Bailey v. Bailey*, 316 Conn. 182, 192 (2015). When the language is ambiguous, however, "the determination of the parties' intent is a question of fact." *Id.* Thus, resolution of Plaintiff's breach of contract claims would require the finder of fact to interpret the settlement agreement, determine whether Defendants' provision of mental health treatment satisfied the intent of the agreement, and if not, assess what damages should be awarded for the breach.

Plaintiff alleges that he has not been receiving his weekly mental health treatment sessions, which was a specific condition of the settlement agreement. ECF No. 1 ¶ 23. Taking Plaintiff's representations about the requirements of the settlement agreement as true—as the Court lacks the benefit of having the settlement agreement in the record at this juncture—Plaintiff's allegations in his complaint are sufficient at this stage of the action to demonstrate that: (a) an enforceable settlement agreement was reached between the parties[4]; (b) it was breached by Defendants Binezewski, Wolf, Hernandez, and Moravecek when they did not provide Plaintiff with his weekly mental health treatment sessions provided for in the agreement; (c) Plaintiff met all his requirements under the agreement; and (d) he is entitled to damages under the agreement.

Thus, the Court asserts supplemental jurisdiction under section 1367(a) over Plaintiff's breach of contract claim and finds Plaintiff has sufficiently alleged this claim, for purposes of

---

[4] The Court notes, however, that without reviewing the settlement agreement, it cannot be certain that any of the named Defendants in this action are parties to the settlement agreement from the prior actions. If any named Defendant herein is not a party to the settlement agreement, they may move to dismiss the breach of contract claim against them at the appropriate time.

initial review.

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

(1) Plaintiff may proceed on his individual capacity claims for damages based on an Eighth Amendment violation against Dr. Kelly Wolf, Michelle Binezewski, and RCOO Nicole Hernandez for deliberate indifference to his mental health; and

(2) Plaintiff may proceed on his official capacity claims for injunctive relief based on an ongoing Eighth Amendment violation against Dr. Kelly Wolf, Michelle Binezewski, and RCOO Hernandez for deliberate indifference to his mental health.

(3)  All other constitutional federal claims are DISMISSED.

(4)  The Court also chooses to exercise jurisdiction over Plaintiff's state law contract claim based on breach of his settlement agreement.  At this time, Plaintiff's breach of contract claim may proceed as against Defendants Wolf, Binezewski, Hernandez, Moravecek, and Quiros.

(5)  All claims against HSAR Coordinator Debra Cruz are DISMISSED without prejudice.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If he wishes to proceed immediately **only** on the claims set forth above against Dr. Kelly Wolf, Dr. Michael Moravecek, Michelle Binezewski, RCOO Nicole Hernandez, and Commissioner Quiros, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **June 8, 2026**, informing the Court that he elects to proceed with service as to the claims set forth above.  After Plaintiff files his notice, the Court will begin the effort to serve process on Defendants Dr. Kelly Wolf, Dr. Michael Moravecek, Michelle

Binezewski, RCOO Hernandez, and Quiros, in their individual and/or official capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **June 8, 2026**. **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint.** The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **June 8, 2026**, the Court will presume that he wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and he will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(d) provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of

31

address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address once

they have appeared in this action.


        **SO ORDERED** at Hartford, Connecticut, this 7th day of May, 2026.


                            */s/ Sarala V. Nagala*
                            SARALA V. NAGALA
                            UNITED STATES DISTRICT JUDGE